**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------×
PIA WILLIAMS,

                *Plaintiff,*                            **19 CV 1012**

      *v.*

                                                  **COMPLAINT**

NYU LANGONE HOSPITALS, *and* MARY CARMODY,
*individually,*

                *Defendants.*
-----------------------------------------------------------------------×

      Plaintiff Pia Williams, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants NYU Langone Hospitals (the "Hospital") and Mary Carmody, individually, as follows:

**PRELIMINARY STATEMENT**

      1.     The Hospital hired Ms. Williams in 2003 as a Clerk Typist and, in 2007, promoted her to Secretary. In 2017, the Hospital demanded that Ms. Williams lift heavy cases of water, which Ms. Williams was unable to do because of her disability (lower back and knee pain from her early onset arthritis). The Hospital then told her she would have to either lift the cases of water or go out on intermittent medical leave under the Family and Medical Leave Act ("FMLA")—failing entirely to begin a cooperative dialogue to identify a reasonable accommodation (namely, not lifting heavy items) that would allow Ms. Williams to do her job. On April 3, 2018, Ms. Williams renewed her FMLA leave. Just one month later, the Hospital terminated Ms. Williams due to an "alleged untimely sending of [a] fax," claiming that she "didn't give it to a staff member and interfered with patient care." The Hospital, however, had already cleared her a few weeks earlier of any wrong-doing regarding this fax. In reality, the Hospital terminated Ms. Williams for her use of medical leave under the FMLA.

1

2. Ms. Williams seeks damages and costs against the Hospital for interfering with her Family and Medical Leave Act ("FMLA") leave and terminating her employment in retaliation for taking medical leave, in violation of the FMLA, 29 U.S.C. §§ 2601 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

3. Ms. Williams also seeks damages and costs against the Hospital for discriminating against her based on her disability by refusing to begin a cooperative dialogue, terminating her employment because of her disability, and retaliating against her for requesting a reasonable accommodation and complaints of discrimination, in violation of the NYCHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

4. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FMLA.[1]

5. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

---

[1] On February 1, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission, alleging disability discrimination and failure to accommodate claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. Plaintiff intends to amend her complaint to bring claims of failure to accommodate and unlawful termination claims under the ADA.

## PARTIES

8. Plaintiff, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

9. Upon information and belief, at all times relevant hereto, the Hospital was and is a domestic not-for-profit corporation organized under the laws of the State of New York with its principal place of business located at 301 East 17th St, New York, New York 10003.

10. Upon information and belief, at all times relevant hereto, Defendant Carmody is a citizen of the State of New York, as she is domiciled in the State of New York.

## COVERAGE UNDER FMLA

11. To be eligible under the FMLA, an employer must be engaged in commerce, or in any industry or activity affecting commerce, and employ 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.

12. To be eligible for leave under the FMLA, an employee must have been employed (i) for at least 12 months by the employer, and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period.

13. At all relevant times, the Hospital was an enterprise engaged in commerce and had employed more than 50 individuals in the preceding calendar year.

14. At all relevant times, Ms. Williams had been employed at the Hospital for over 12 months and had worked at least 1,250 hours for the Hospital in the previous 12-month period.

15. Ms. Williams's lower back and knee pain from a prior injury constituted a serious health condition under the FMLA.

16. As an eligible employee, Ms. Williams was therefore entitled under the FMLA to 12 work weeks of leave in a 12–month period.

**STATEMENT OF FACTS**

17.     When Ms. Williams was about 15-years-old, she was diagnosed with early onset arthritis in her knees.

18.     Ms. Williams's arthritis causes her knees to dislocate from time-to-time, causing pain and discomfort, especially in her knees and lower back.

19.     On August 25, 2003, the Hospital hired Ms. Williams as a Clerk Typist.

20.     Around 2005, Ms. Williams's knee dislocated and she went to a nearby doctor, who took x-rays and confirmed her earlier diagnosis of early onset arthritis, and told her she should not carry any items more than 10 pounds.

21.     In 2007, the Hospital promoted her to a Secretary position in the Social Work and Case Management Department (the "Department"), tasking her with answering phones and facsimiles, scheduling and managing calendars for the department, billing invoices, and supply ordering.

22.     In 2012, the Hospital hired Mary Carmody as the Assistant Director of the Department and Ms. Williams's immediate supervisor.

23.     In September 2017, Ms. Carmody demanded that Ms. Williams lift heavy cases of water—a request that had never been asked of her during her 14-year tenure at the Hospital.

24.     Ms. Williams, however, could not lift heavy items due to her early onset arthritis and lower back and knee pain.

25.     Her physical impairment prevented her from carrying heavy items, bending or squatting, standing for prolonged periods of time, and other activities affecting her lower back and knees.

26. When Ms. Williams explained her need for an accommodation, namely, not lifting the water cases, Ms. Carmody interrupted and said, "If you don't lift these cases, I will take it as a form of insubordination."

27. Shocked at Ms. Carmody's immediate dismissal of her health concerns, Ms. Williams again explained that she had knee problems that prohibited her from carrying heavy items, to which Ms. Carmody did not respond.

28. Shortly after this conversation, Austin Bender, the Director of the human resources department, emailed Ms. Williams, telling her, "If you want to be excused [from lifting the water bottles], fill out an FMLA form."

29. Ms. Williams would have preferred to continue working without being required to lift heavy items.

30. However, because the Hospital did not offer another option, Ms. Williams filled out the necessary paperwork for her FMLA leave.

31. The Hospital never offered Ms. Williams an accommodation under the ADA or the NYCHRL.

32. On or around October 4, 2017, the Hospital approved Ms. Williams for six months of intermittent FMLA leave.

33. Ms. Williams used FMLA for doctor appointments to receive paper work and for the occasional knee issue.

34. While the Hospital did not continue to demand that Ms. Williams lift the water, management made frequent hostile remarks about Ms. Williams's disability.

35. For example, in front of Ms. Williams, multiple managers commented, "other people have to lift cases because certain people can't," blatantly referring to Ms. Williams.

36. In November 2017, Ms. Carmody gave Ms. Williams a negative evaluation without reason or explanation.

37. Ms. Williams reached out to human resources and her union for assistance.

38. Yet human resources failed to respond to any of Ms. Williams's emails or do anything whatsoever to address her concerns or improve her working conditions.

39. In January, Ms. Williams's union emailed human resources on her behalf to schedule a meeting in hopes of resolving these issues of discrimination and retaliation.

40. Human resources never followed up nor did anything of substance to help improve Ms. Williams's situation.

41. On April 3, 2018, Ms. Williams renewed her FMLA.

42. On April 11, 2018, the Hospital brought Ms. Williams into an impromptu meeting to criticize the way she had handled sending out a fax a week prior, specifically claiming that she had not sent it out in a "timely manner."

43. Ms. Williams explained that the Hospital had received the fax at 7:00 p.m. (after hours) on Friday and that the recipient of the fax was out of the office on the following Monday.

44. Ms. Williams, therefore, gave this fax to another Hospital employee, who sent the fax to the recipient on Tuesday.

45. During this meeting, the Hospital management gave Ms. Williams no write-up for this supposed infraction.

46. On May 21, 2018, however, the Hospital suddenly terminated Ms. Williams due to her "alleged untimely sending of the fax," claiming that she "didn't give it to a staff member and interfered with patient care."

47. Throughout her employment at the Hospital, Ms. Williams was a dedicated employee who consistently fulfilled her job responsibilities.

48. Indeed, the Hospital had already cleared her of any wrong-doing regarding this fax.

49. The Hospital also claimed that Ms. Williams's termination was due to her untimely manner filing end-of-day reports.

50. Yet, Ms. Williams had turned in all but one of her end-of-day reports between 10:30 a.m. and 11:00 a.m., as she had been instructed to by Ms. Carmody.

51. When Ms. Williams asked why the "untimely" filing of these end-of-day reports was cause for her termination, the Hospital had no response.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Interference in Violation of the FMLA

52. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 51 with the same force as though separately alleged herein.

53. The FMLA prohibits an employer from denying or otherwise interfering with an employee's rights under the FMLA or otherwise retaliating against an employee for exercising their FMLA rights.

54. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, and Defendant was an employer as defined in the FMLA.

55. Plaintiff was entitled under the FMLA to 12 workweeks of leave due to her serious health condition (lower back and knee pain).

56. Plaintiff gave notice to Defendants of her serious health condition.

57. Plaintiff was on FMLA leave.

58. Defendants interfered with Plaintiff's exercise of her FMLA-protected rights by terminating her employment before the completion of her FMLA leave.

59. As such, Defendants have violated the FMLA.

60. As a direct and proximate consequence of Defendants' FMLA interference, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and liquidated damages.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the FMLA

61. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62. The FMLA prohibits an employer from retaliating against an employee for exercising, or attempting to exercise, their rights under the FMLA.

63. Defendants retaliated against Plaintiff by terminating her employment.

64. As such, Defendants have violated the FMLA.

65. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and liquidated damages.

## THIRD CAUSE OF ACTION
### Failure to Begin a Cooperative Dialogue in Violation of the NYCHRL

66. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 65 with the same force as though separately alleged herein.

67. The NYCHRL requires an employer to begin a cooperative dialogue to enable an employee with a disability to satisfy the essential requisites of a job, provided that the disability is known or should have been known to the employer.

68. At all relevant times, Plaintiff was an individual with a disability within the meaning of the NYCHRL.

69. Defendants were fully aware of Plaintiff's disability, as Plaintiff notified Defendants of her disability and requested to begin a cooperative dialogue.

70. Defendants refused to grant Plaintiff's requests to begin a cooperative dialogue concerning her disability and failed to engage in the mandatory interactive process to begin a cooperative dialogue for Plaintiff's disability.

71. As such, Defendants have violated the NYCHRL.

72. As a direct and proximate consequence of Defendants' failure to begin a cooperative dialogue concerning her disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss, emotional distress and suffering.

73. Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**FOURTH CAUSE OF ACTION**
**Wrongful Termination in Violation of the NYCHRL**

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

76. Defendants violated the NYCHRL when it terminated Plaintiff's employment based on her disability.

77. As a direct and proximate consequence of Defendants' disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss, emotional distress and suffering.

78. Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

79. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 78 with the same force as though separately alleged herein.

80. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

81. Plaintiff engaged in protected activity under the NYCHRL when she properly requested an accommodation under the NYCHRL and complained about discrimination.

82. Defendants retaliated against Plaintiff by harassing her and terminating her employment.

83. As such, Defendants have violated the NYCHRL.

84. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss, emotional distress and suffering, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, back and front pay, liquidated damages, attorneys' fees and costs, and interest to be determined at the trial of this action;

B. For the second cause of action, back and front pay, liquidated damages, punitive damages, attorneys' fees and costs, and interest to be determined at the trial of this action;

C. For the third cause of action, back and front pay, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the trial of this action;

D. For the fourth cause of action, back and front pay, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the trial of this action;

E. For the fifth cause of action, back and front pay, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the trial of this action; and

F. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 1, 2019

By:  s/ Edgar M. Rivera
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
381 Park Avenue South, Suite 1220
New York, NY 10016
T: (212) 425-2600
E: erivera@theharmanfirm.com

*Attorney for Plaintiff*